# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **DWAYNE RAYSHON DEGRAFFENRIED,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| ) | 1:19CV1233 |
| v. ) | |
| ) | |
| **ERIC A. HOOKS,** ) | |
| ) | |
| **Respondent.** ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Dwayne Rayshon Degraffenried, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entries 1-2.) Respondent filed an answer (Docket Entry 5), a motion for summary judgment (Docket Entry 6), and a supporting brief (Docket Entry 7). Petitioner then filed a response (Docket Entry 9) to the motion for summary judgment. This matter is now ready for a ruling.

## Procedural Background

In late 2017, in Guilford County Superior Court, Petitioner was convicted after a jury trial of trafficking in cocaine by possession and trafficking in cocaine by transportation and was sentenced to 70-93 months of imprisonment. (Docket Entry 7, Ex. 2 at 26, 29.) His direct appeal was unsuccessful. *State v. Degraffenried*, 262 N.C. App. 308 (2018), *review dismissed*, 372 N.C. 707 (2019). The Motion for Appropriate Relief ("MAR") that Petitioner filed in Guilford County Superior Court, to which he later filed an addendum, was denied initially. (Docket Entry 7, Exs. 5-7.) Petitioner's motion for reconsideration was granted, but the court, after

reconsideration, denied all the grounds Petitioner raised in his MAR, his addendum, and his motion for reconsideration. (*Id.*, Exs. 8-9.) Petitioner's petition for certiorari with the North Carolina Court of Appeals was denied. (*Id.*, Exs. 10-11.) Petitioner's petition for discretionary review with the North Carolina Supreme Court was then dismissed. (*Id.*, Exs. 12-13.) Petitioner then filed the instant petition. (Docket Entry 1.)

## Factual Background

In denying his sole argument raised on direct appeal related to an improper closing argument by the prosecutor, the North Carolina Court of Appeals set forth the following factual background and concluded that it was overwhelming evidence of Petitioner's guilt:

> Guilford County sheriff's deputies entered the home of Jamie Yarborough to execute a search warrant they had obtained after several weeks of prior observation and surveillance. The search yielded approximately 28 grams of cocaine inside Yarborough's home. Greensboro Police officers arrived to participate in the investigation after the seizure of the cocaine.
>
> Immediately after his arrest, Yarborough volunteered to contact his supplier, who officers later identified as Defendant. Yarborough called Defendant and requested he deliver approximately nine ounces of cocaine to Yarborough's home. Defendant arrived alone carrying a black drawstring bag. A sheriff's deputy deployed a "flash bang" to disorient Defendant and Yarborough, which caused both men to fall to the ground. Defendant, along with the black bag he carried, and Yarborough were taken into custody.
>
> A North Carolina State Crime Lab forensic scientist later tested the white powder found inside the black bag carried by Defendant and determined it contained 248.25 grams of cocaine. Defendant was indicted for trafficking by possessing 200 or more but less than 400 grams of cocaine, and trafficking by transporting 200 or more but less than 400 grams of cocaine.
>
> During closing arguments, the prosecutor, without objection, made references to Defendant's right to a jury trial and noted he

> had exercised that right despite "[a]ll of the evidence" being against him. The jury returned verdicts finding Defendant guilty of both charges. The court consolidated the offenses and sentenced Defendant to a minimum of 70 months and a maximum of 93 months of imprisonment. Defendant filed written notice of appeal the same day.
>
> . . . .
>
> The evidence of Defendant's guilt was overwhelming. Yarborough identified Defendant as his cocaine supplier. Yarborough, in cooperation with sheriff's deputies and police officers, called Defendant to ask for another delivery of cocaine.
>
> Defendant arrived alone at Yarborough's home and was apprehended with a black drawstring bag, which was later determined to contain almost 250 grams of cocaine.

*Degraffenried*, 262 N.C. App. at 309, 312.

## **Petitioner's Grounds**

Petitioner contends that (1) "the highest state court decision summary denial was objectively unreasonable"; (2) "the State Supreme Court decision was objectively unreasonable, for those reasons set out in 2254(d)(1) and (2)"; (3) there exists newly discovered evidence as set out in the MAR (as amended), certiorari petition filed in the North Carolina Court of Appeals, and petition for discretionary review filed in the North Carolina Supreme Court; and (4) all of the claims set forth in the MAR (as amended), certiorari petition, and

petition for discretionary review have merit.[1] (Docket Entry 1, Grounds One through Four.) For the reasons set forth below, all these grounds are without merit.[2]

## Standard of Review

Where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the

---

[1] Petitioner's grounds, and his arguments in support of his grounds, are sometimes difficult to follow. The undersigned has attempted to respond to all of the many variations of Petitioner's claims and sub-claims. To the extent that any have not been specifically discussed, they should still be denied for essentially the reasons set out herein. Likewise, to the extent Petitioner seeks to recharacterize any of his arguments in terms of ineffective assistance of trial or appellate counsel, they should likewise be denied for the same reasons set forth herein, particularly because counsel is under no obligation to raise meritless claims or objections and for want of prejudice.

[2] Respondent asserts that Petitioner's grounds for relief are procedurally barred. (Docket Entry 7 at 5-9.) Here, however, considering Petitioner's claims on the merits rather than first resolving the procedural bar issue will promote judicial economy, and therefore the Court will proceed to the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (disclaiming any intention "to suggest that the procedural-bar issue must invariably be resolved first" in a habeas case, and explaining that "[j]udicial economy might counsel" in favor of going directly to the merits if the merits are easily resolvable against the petitioner).

4

correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "Unreasonable" does not mean just "incorrect" or "erroneous" and the Court must judge the reasonableness from an objective standpoint. *Id.* at 409-11. State court factual findings are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court notes that even if the deferential standard of review were entirely inapplicable here, Petitioner's grounds for relief would all still fail under a de novo standard of review.

## Discussion

### Grounds One through Three

Petitioner first contends "[t]hat the highest state court decision summary denial was objectively unreasonable" and "[t]hat the State Supreme Court decision was objectively unreasonable, for those reasons set out in 2254(d)(1) and (2)." (Docket Entry 1, Grounds One and Two.) Petitioner also asserts newly discovered evidence as set out in the MAR (as amended), certiorari petition filed in North Carolina Court of Appeals, and petition for discretionary review filed in the North Carolina Supreme Court. (*Id.*, Ground Three.) These grounds, which are identical or overlap, are all without merit.

### a. Petitioner's Confrontation Clause argument has no merit.

Petitioner filed a petition for discretionary review with the Supreme Court of North Carolina, which was denied. (Docket Entry 2, Ex. A.) His claims largely turned on his assertion that it was trial court error to admit, through the testimony of various police officers, the hearsay testimony of Jamie Yarborough. (*Id.* at 3-4.) As noted, the evidence at trial supported the conclusion that law enforcement entered Yarborough's double-wide mobile home on a

5

search warrant and discovered 28 grams of cocaine. (Docket Entry 7, Ex. 14 at 24-29, 67-71.) Yarborough then volunteered to contact his supplier, called Petitioner, and requested Petitioner deliver nine ounces of cocaine to Yarborough's home, which Petitioner did. (*Id.* at 30-46, 117, 126-137, 144-146.) Because Yarborough had apparently fled and was at-large, he did not testify at Petitioner's trial and the aforementioned evidence—as well as the existence of Yarbrough's substantial assistance to law enforcement—was introduced by law enforcement officers. (*Id.* at 24-46, 52, 67-71, 89-99, 117, 126-137, 144-146.)

Because Yarborough did not testify at trial, Petitioner had no opportunity to cross-examine him, and Petitioner contends in a variety of ways that this violates the Confrontation Clause. (Docket Entry 2, Ex. A at pdf pages 4-5, 13-14.) Petitioner also faults the trial court for not giving a limiting instruction to the jury addressing Yarborough's out-of-court statements. (*Id.* at 15.) Petitioner also asserts that there was insufficient evidence to convict him at trial of knowingly possessing cocaine. (*Id.* at 16.) In support, Petitioner asserts that he thought that—rather than delivering Yarborough a bag of cocaine—he was actually returning a bag of jewelry entrusted to him for safekeeping. (*Id.* at 17.) Petitioner asserts further that his warrantless arrest, as well as the search and seizure of the bag of cocaine he was carrying, was unlawful. (*Id.* at 8, 17-18.) He asserts further that prosecutors knowingly used perjured testimony against him at trial. (*Id.* at 13-14.) None of these arguments has merit, even under a de novo standard of review.

Regarding the Confrontation Clause, the Fourth Circuit recently explained that:

> [t]he Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." This constitutional right to confrontation bars the admission of

6

> "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Clause does not, however, "bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9, 124 S.Ct. 1354.

*United States v. Jordan*, 952 F.3d 160, 167-68 (4th Cir. 2020). Purposes other than establishing the truth of the matter asserted include explaining why authorities undertook an investigation and their ensuing conduct.[3]

Here, the Confrontation Clause issue was first raised in Petitioner's MAR, and amended MAR, and it was found to be meritless because "even if . . . a motion or objection had been made, the statement allegedly made by Mr. Yarborough [that Petitioner was trafficking in cocaine] could have been admitted for some other purpose, such as to explain the law enforcement officer's actions in this case." (Docket Entry 7, Ex. 9 at 2-3.) This was a valid reason for denying Petitioner's Confrontation Clause issue, because, as explained, the

---

[3] *See United States v. Brown*, 576 Fed. App'x 145, 148-49 (4th Cir. 2014) ("But the admission of non-hearsay does not implicate a defendant's confrontation rights. Out-of-court statements explaining or providing context for the actions of law enforcement officers are routinely admitted as non-hearsay. Here, the confidential informant's statements to [a law enforcement officer] were not offered for their truth, but for the limited, permissible purpose of explaining [the law enforcement officer's] ensuing actions regarding the search warrant. Because the statements explained context and motivation, we conclude that the testimony did not implicate the Confrontation Clause.") (citations omitted); *United States v. Washington*, 461 Fed. App'x 215, 220-21 (4th Cir. 2012) ("[T]he [CI]'s out-of-court statements to [law enforcement] were properly admitted not for the truth of the matter asserted, but rather for the limited, permissible purpose of explaining the investigative activity that ensued."); *see also United States v. Hines*, 380 Fed. App'x 320, 322 (4th Cir. 2010) ("Here, a government witness testified to information provided by the [CI] to explain why the authorities undertook an investigation into Hines. Accordingly, as this information was not offered for its truth, the introduction of these statements did not violate the Confrontation Clause.") (citation omitted).

7

Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.

Moreover, even assuming there was a Confrontation Clause violation here (which is not the case), it was harmless. A violation of the Confrontation Clause "does not automatically entitle a petitioner to a grant of a writ of habeas corpus." *Wiggins v. Boyette*, 635 F.3d 116, 121 (4th Cir. 2011). Such an error is, instead, subject to review for harmlessness. *See id.*; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (remanding on direct appeal for a harmless-error analysis because "[w]e believe that the determination whether the Confrontation Clause error in this case was harmless . . . is best left to the Delaware Supreme Court in the first instance"). In a federal habeas matter, a constitutional error will warrant relief only if the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted). The harmless error standard also applies to errors in the jury instructions. *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013).

Here, the evidence against Petitioner was overwhelming and any Confrontation Clause error was harmless. As noted, Petitioner was apprehended by the police with a bag containing 248 grams of cocaine in his hand that he was delivering to the home of a known drug dealer. (Docket Entry 7, Ex. 14 at 40-46, 60, 97-100, 136.) And, despite his arguments to the contrary, the evidence in this context (described above and elsewhere herein) was sufficient to support his conviction.[4] Consequently, any argument about the sufficiency of the evidence, hearsay, the Confrontation clause, or the jury instructions, fails.

---

[4] "The elements the State must prove beyond a reasonable doubt to support a conviction of trafficking in cocaine . . . by possession [are] that defendant: 1) knowingly possess[ed] cocaine . . . and (2) that the amount possessed was 28 grams or more." *State v. Cardenas*, 169 N.C. App. 404, 409 (2005)

8

### b. Petitioner's Fourth Amendment arguments have no merit.

Additionally, any argument that law enforcement lacked grounds to arrest Petitioner without a warrant or to search his drawstring bag without a warrant is also without merit, as is any attendant ineffective assistance of counsel claim involving the same. As the MAR court correctly concluded, there is no reason to believe that a motion to suppress would have succeeded. (Docket Entry 7, Ex. 9 at 3.)

Here, law enforcement officers, at the end of an investigation, executed a search warrant to search Yarborough's home. (Docket Entry 7, Ex. 14 at 22-28, 48-50, 69-72, 86.) Cocaine, a "high tech security system," and drug paraphernalia were all found in Yarborough's home, a shotgun wrapped in plastic was found in the woods nearby, and Yarborough was arrested. (*Id.* at 28-31, 51, 87-88, 125-126.) Yarborough agreed to cooperate with law enforcement. (*Id.* at 34-35, 50, 89, 126-127.) Yarborough identified Petitioner as his supplier, called Petitioner, and arranged for Petitioner to deliver cocaine to his (Yarborough's) residence. (*Id.* at 34-40, 50, 53, 89-94, 127-130.) In a series of phone calls, Yarborough and Petitioner discussed the price of the cocaine and agreed Petitioner would deliver it to Yarborough's residence. (*Id.* at 38, 94, 130-133.) Within twenty minutes of the last phone call (and about 45 minutes from the first phone call) Petitioner arrived at Yarborough's residence by himself, stepped out of his car carrying a black drawstring bag, met Yarborough, and moved towards a camper where he and Yarborough had previously consummated their drug transactions. (*Id.* at 40-44, 77, 96-98, 114, 133-135.) At this point, law enforcement had

---

(citation, internal quotation omitted). "Similarly the two essential elements of trafficking in cocaine by transportation are that (1) the defendant must have transported the cocaine, and (2) the defendant must have transported the cocaine knowingly." *State v. Macias*, 154 N.C. App. 743 (2002).

9

probable cause to arrest Petitioner for drug related crimes.[5] Law enforcement then employed a flash bang device, arrested Petitioner, and searched the drawstring bag he had been carrying in his hand, which contained cocaine. (Docket Entry 7, Ex. 14 at 44-46, 98-99, 115-117.) Under these circumstances, this was a lawful search incident to Petitioner's arrest.[6] Petitioner does not have a meaningful Fourth Amendment claim for relief.

### c. Petitioner's new evidence and prosecutorial misconduct claims lack merit.

Petitioner also alleges that he has uncovered new evidence that the prosecutors knowingly used perjured testimony against him at trial. (Docket Entry 1, Ground Three; Docket Entry 2, Appendix at pdf pages 7, 14-21.) In support, Petitioner provides five documents. The first document is a one-sentence handwritten letter dated July 11, 2018, with an illegible signature that Petitioner claims belongs to a man named Benjamin Uhlenberg,

---

[5] *See United States v. Galloway*, 274 Fed. App'x 241, 245 (4th Cir. 2008) ("'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (citation omitted).

[6] *See, e.g.*, *United States v. Ferebee*, 957 F.3d 406, 419-20 (4th Cir. 2020) (concluding that defendant was not "secured" within in meaning of *Gant* so that warrantless search was justifiable where defendant, although handcuffed, could still walk around somewhat freely and could have made a break for the backpack inside the house); *United States v. Lomax*, 744 Fed. App'x 754, 756-57 (3d Cir. 2018) (concluding that although defendant's hands were cuffed behind his back at the time of the search, that fact is unavailing where there was still a reasonable possibility he could have accessed the gun hidden in the jacket he had dropped beside him); *United States v. Cook*, 808 F.3d 1195, 1199-1200 (9th Cir. 2015) (holding that search of backpack was lawful under *Gant* even though defendant was face-down on the ground with his hands cuffed behind his back at the time of the search because there was an objectively reasonable possibility that he could break free and reach the backpack); *United States v. Perdoma*, 621 F.3d 745, 750-53 (8th Cir. 2010) (holding that warrantless search of bag in public bus terminal was appropriate under *Gant* even though defendant was handcuffed and in the presence of several police officers); *United States v. Shakir*, 616 F.3d 315, 320-21 (3d Cir. 2010) (recognizing "handcuffs are not fail-safe," and finding that warrantless search of bag was proper search incident to arrest even though defendant was handcuffed and guarded by two policemen when bag was at defendant's feet and thus accessible to him).

stating "Yarborough cooperated with law enforcement and turned me in[.]" (Docket Entry 2, Appendix at pdf pages 7, 14.) The second document is an undated purported Facebook message from Yarborough stating "wish I could fix dis shit," "I will go to court an[d] let them no [sic] it was my shit," "willing to make a confession for you . . . ." (*Id.* at 7, 15.) The third document is a police report reporting an incident/investigation at Yarborough's home on September 7, 2016 in which the Guilford County Sherriff's Department seized 31 grams of cocaine. (*Id.* at 7, 16-19.) The fourth document is a newspaper article, dated September 9, 2016, indicating that Benjamin Uhlenberg was arrested for assault with a deadly weapon with intent to kill on September 8, 2016 in Guilford County. (*Id.* at 20.)

The fifth document is an affidavit from Petitioner in which he states:

> On September 8, 2016, Jamie Yarborough showed up at my girlfriend's residence, 943 Pensford Drive, Whitsett, NC. He informed me that the police had come to his house looking for someone we both knew, Benjamin Uhlenburg. He also showed me video of the incident from his phone in which I saw the officers coming out of his place with a long black gun. Yarborough informed me that he agreed to let them in and od [sic] a body search looking for the suspect [Benjamin Uhlenberg]. He told me he was leaving town for a few days because his house was "hot," and he needed to leave some clothes and jewelry at the house until he got back. I didn't think anything of it and told him to put it on the shelves in the garage. I never bothered to look, I never second guessed him and I never questioned him. On September 14, 2016, a few days later, I received a text from him saying he was back and to bring his jewelry. I grabbed his jewelry bag and was at his house in 4 to 5 minutes. I stayed less than a mile from him. I pulled up at his house with what I was thinking to be jewelry in a bag and now I'm sitting in prison. I never once looked in the bag and I'm still in shock right now that he put my family in harms way if drugs were really in that bag. I never knew that the bag contained drugs. I never received a phone call from Yarborough that day, prior to going to his residence with his bag to my knowledge.

11

(*Id.* at 44-45.) Petitioner's newly discovered evidence claim (which the Court construes as a *Brady* claim) and prosecutorial misconduct claim were denied repeatedly by the state courts. (Docket Entry 7, Exs. 7, 9, 11, 13.)

"When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005) (citation omitted). To successfully show a *Brady* violation, a petitioner must establish three things. First, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Second, the evidence must have been willfully or inadvertently suppressed by the state. *Id.* at 282; *see also United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001). Finally, prejudice against a petitioner must have resulted (*i.e.*, the evidence at issue was "material"). *Strickler*, 527 U.S. at 282; *see also Stokes*, 261 F.3d at 502. Evidence is considered "material" and thus subject to *Brady* disclosure "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here, Petitioner's argument lacks merit in all of its iterations under even a de novo standard of review. None of the evidence to which Petitioner points demonstrates prosecutorial misconduct or a *Brady* violation or that Petitioner's constitutional rights were violated. Petitioner has failed to demonstrate any improper conduct by the prosecution or that the prosecution withheld exculpatory or impeaching evidence. Petitioner asserts that the police report described above—indicating that 31 grams of cocaine were apparently seized

12

from Yarborough's home on September 7, 2016—proves that Detective L.J. Tucker lied at Petitioner's trial when Tucker testified that the first time he had been to Yarborough's home or interacted with him was on September 16, 2016. (Docket Entry 9 at 3 referencing Docket Entry 7, Ex. 14 at 144.) While the police report does indicate that Detective Tucker was the reporting officer for the September 7th incident, it does not state that Detective Tucker (as opposed to the other law enforcement officers listed in the report) visited Yarborough's home or interacted with him. (Docket Entry 2, Appendix at 16-19.) Moreover, under cross-examination, Detective Tucker made it clear that Yarborough had other charges and Tucker stated further that he thought he was a named officer on at least one of the reports resulting in those charges. (Docket Entry 7, Ex. 14 at 146-147.) There is no evidence Detective Tucker lied at trial or that the prosecution withheld exculpatory or impeaching evidence or engaged in some form of misconduct.[7]

Additionally, the newspaper article about Uhlenberg, and the content of the letter purportedly written by him, are neither new, nor relevant as to whether Petitioner possessed or trafficked in cocaine. The Facebook message which Petitioner asserts exonerates him, purportedly written by Yarborough, is also problematic. It is undated, unsigned, and of

---

[7] In his amended MAR, Petitioner also argues that the purported newly discovered evidence discussed herein demonstrates that Sergeant Matt Holder lied at trial because he (like Detective Tucker) denied encountering Yarborough before September 14, 2016. (Docket Entry 7, Ex. 6 at 2-3 referencing Docket Entry 7, Ex. 14 at 102.) However, this argument fails. The evidence to which Petitioner points does not demonstrate that Sergeant Holder perjured himself. Petitioner also asserts that Holder and Tucker lied at trial when they testified that a firearm was found in the woods near Yarborough's house on September 14, 2016, when it was instead actually removed from Yarborough's home the week before, when both men first visited Yarborough's home. (Docket Entry 7, Ex. 6 at 3.) Petitioner's assertion is conclusory and unsupported and fails to warrant any form of relief. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).

13

questionable origin, and there is no reason to believe that it could have been admitted at trial, or that if it had been admitted at trial, the result would have been any different. On the day of trial, Petitioner himself admitted that much of the evidence he wanted to present was inadmissible. (*Id.* at 181-185.) The trial court, quite rightly, pointed out that regardless of this evidence, Petitioner showed up at Yarborough's house with more than 200 grams of cocaine. (*Id.*) The Court agrees that the absence of the evidence at trial to which Petitioner now points did not prejudice him.

As for Petitioner's affidavit, it contains nothing more than a conclusory assertion that he did not know he was bringing Yarborough cocaine. *See Nickerson*, 971 F.2d at 1136. Unsupported and conclusory allegations do not warrant any form of relief, particularly where, as here, the evidence against Petitioner was overwhelmingly to the contrary. *Id.* None of the evidence (to the extent it is evidence) to which Petitioner now points meaningfully suggests that he was denied a constitutional right, that the prosecution committed misconduct, or that counsel committed some material error. For all these reasons, Petitioner's first ground for relief is without merit even under a de novo standard of review.

## Ground Four

In Petitioner's last ground for relief, he appears to re-assert all of his claims set forth in his MAR (as amended), certiorari petition, and petition for discretionary review. (Docket Entry 1, Ground Four.) The Court has already addressed many of those grounds above and has found them to be without merit, even under a de novo standard of review. However, there are a few remaining allegations Petitioner has raised in his various state court pleadings which have yet to be addressed. They too are without merit.

14

More specifically, Petitioner (1) faults counsel for failing to explain to him his trial strategy, (2) claims counsel had an impermissible conflict of interest because counsel was convinced Petitioner was guilty, (3) and faults counsel for failing to secure security recording footage of the search and seizure of Yarborough's home so it could be used to impeach witnesses at Petitioner's trial. (Docket Entry 2, Ex. 2 at pdf page 14.) To prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

The MAR court denied all of these claims as unsupported, conclusory, and for lack of prejudice. (Docket Entry 7, Ex. 9 at 3.) Upon a review of the record, the Court agrees. *See Nickerson*, 971 F.2d at 1136. Petitioner has failed to demonstrate that counsel committed any prejudicial error. None of the claims Petitioner has raised in this proceeding or in the state court proceedings have merit even under a de novo standard of review.[8] The Petition should be denied.

---

[8] Any contention that trial counsel failed to present a defense on Petitioner's behalf also fails because it is contradicted by the record. (Docket Entry 7, Ex. 14.) Similarly, any contention that counsel was ineffective for not seeking an entrapment instruction is likewise without merit. "This case does not involve repeated entreaties by an agent of law enforcement overcoming the will of a reluctant and largely passive Defendant; nor did the informant play on Defendant's emotions or sympathy to induce him to provide her with drugs." *State v. Morgan*, 243 N.C. App. 675 (2015).

## Conclusion

For the reasons set forth above, the Petition should be denied. Neither the appointment of counsel, nor an evidentiary hearing, nor discovery are warranted in this matter.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (Docket Entry 6) be **GRANTED**, that the petition (Docket Entry 1) be **DENIED**, and that Judgment be entered dismissing this action.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

August 19, 2020
Durham, North Carolina